IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 8673 |
| v. ) | |
| ) | Magistrate Judge Sidney I. Schenkier |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Calvin G., moves for reversal and remand of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability benefits (doc. # 16). The Commissioner has filed a response brief, asking this Court to affirm the Commissioner's decision (doc. # 24). Plaintiff has filed his reply (doc. # 25), and so the matter is fully briefed. For the following reasons, we grant Mr. G.'s motion and remand the case.

### I.

Mr. G. applied for benefits on July 6, 2014, alleging an onset date of December 1, 2013 (R. 17). His date last insured was March 1, 2019 (*Id.*). After his claim was denied initially and on reconsideration, Mr. G. and a vocational expert ("VE") testified at a hearing before an Administrative Law Judge ("ALJ") on October 19, 2016 (*Id.*). On January 4, 2017, the ALJ issued a decision denying Mr. G.'s claim for benefits (R. 33). The Appeals Council denied Mr. G.'s request for review of the ALJ's decision, making the ALJ's ruling the final decision of the Commissioner (R. 1-3). *See Shauger v. Astrue*, 675 F.3d 690, 695 (7th Cir. 2012).

---

[1]On December 11, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 10).

## II.

Mr. G. was born on April 16, 1964; he served in the Army between 1982 and 1992 (R. 340). For about eight years prior to his alleged onset date of December 1, 2013, Mr. G. worked as a driver for the railroad (R. 771). He has not worked at a level of substantial gainful activity since then (R. 19). Although Mr. G. contends that he has disabling mental and physical impairments, we focus in this opinion on his allegations of mental impairments because the ALJ's treatment of those compels our decision in this case.

### A.

Mr. G. began receiving psychotherapy for depression at a VA medical center ("VA") in 2014. At a July 9, 2014 visit with social worker Judith Shaw, L.C.S.W., Mr. G. reported that he was having frequent crying episodes related to physical abuse he suffered as a child and he was drinking heavily (R. 702). On July 17, 2014, Mr. G. had a psychiatric consultation at the VA (R. 440). At the consultation, Mr. G. reported that he was sad and cried for no reason and that he had visual hallucinations and bizarre beliefs (R. 440-41). His reported symptoms were consistent with major depressive disorder, generalized anxiety disorder, panic disorder, post-traumatic stress disorder and alcohol dependence (R. 440-44). Mr. G. continued seeing Ms. Shaw but did not pursue psychiatric help at that time (R. 684-87, 694).

On October 31, 2014, Mr. G. was examined by Ana A. Gil, M.D., for the Department of Disability Services ("DDS"). He reported having frequent flashbacks of his childhood physical abuse and of an incident when a woman lit herself on fire in front of him while he was serving as a guard in Korea (R. 640-41). Mr. G. also reported feelings of hopelessness, helplessness, decreased energy, social isolation and poor sleep, as well as a history of dizziness, blurred vision and headaches (R. 641). On examination, he had mild psychomotor retardation, a sad and restricted

2

affect, and moderately depressed mood (R. 642). Mr. G.'s thought process was logical, but he kept thinking about his experience in the Army (*Id.*). Tests of Mr. G.'s memory, general knowledge and judgment were normal (R. 642-43). Dr. Gil diagnosed him with moderate to severe adjustment disorder with depressed mood, moderate chronic PTSD, and a history of chronic alcohol dependence (R. 644).

On November 19, 2014, a non-examining state agency psychologist opined that Mr. G. had severe anxiety disorders, affective disorders and alcohol addiction disorders that caused him moderate difficulties in maintaining concentration, persistence or pace, and mild difficulties in other areas of functioning (R. 77-80, 87). On reconsideration, although Mr. G. had reported increased depression (R. 98), another non-examining state agency psychologist found no significant change in his symptoms and reaffirmed the prior state agency determination (R. 103).

On December 23, 2014, Mr. G. reported to Ms. Shaw that he had stopped drinking two weeks before, but his mood continued to be up and down (R. 682). Because he was now sober, Ms. Shaw referred him to psychiatry for a medication evaluation (R. 682-83). On January 7, 2015, Mr. G. met with psychiatry resident, Christoph Mestrezat, M.D., at the VA (R. 679, 770). Donald Koziol, M.D., was the attending psychiatrist. Mr. G. reported severe anhedonia (inability to feel pleasure), loss of appetite, low energy, poor concentration, depression, flashbacks and nightmares (R. 779). Dr. Mestrezat opined Mr. G. had major depressive disorder and alcohol use disorder in early remission, and he prescribed Mr. G. sertraline (an anti-depressant) (R. 779-80).

The following month, on February 10, 2015, Mr. G. returned to Dr. Mestrezat. Mr. G. was tearful and depressed, and he felt paranoid that his neighbors were plotting against him (R. 813-14). Dr. Mestrezat increased his dose of sertraline (*Id.*). On March 3, 2015, Mr. G.'s affect had improved somewhat, and his sleep had improved with Benadryl (R. 811). However, he continued

3

to report paranoia about his neighbors and frustration in social situations (*Id.*). On examination, Mr. G. was tearful and moderately irritable, but he had fair judgment and insight and no overt cognition deficits (R. 812).

On March 30, 2015, Dr. Koziol examined Mr. G., who reported no improvement from sertraline: he laughed or cried for no reason, and he was frustrated that he could not control his emotions (R. 809). On examination, Mr. G. had a depressed mood and blunting of affect, but no delusions or hallucinations, good comprehension, and intact judgment and insight (R. 810). Dr. Koziol further increased his dose of sertraline (*Id.*).

On April 8, 2016, Mr. G. was again examined by Dr. Koziol (R. 806). At that visit, Mr. G. reported frequently being forgetful and getting lost or disoriented (*Id.*). He also felt depressed and irritable with others (R. 807). Dr. Koziol assessed Mr. G. with persistent depressive disorder and increased his dose of sertraline (*Id.*).

On April 29, 2016, Patricia J. Lim, Psy.D., performed a five-hour neuropsychology evaluation on Mr. G. after Dr. Koziol referred him due to his complaints of memory problems, disorientation and forgetfulness (R. 770). After administering tests to determine Mr. G.'s orientation, attention/concentration, language skills, memory/new learning, visual-perceptual skills and executive skills, Dr. Lim diagnosed Mr. G. with major neurocognitive disorder with behavior disturbances -- moderate cognitive impairment of unclear etiology with reports of auditory and visual hallucinations (R. 776).

In the field of orientation, Dr. Lim found Mr. G. was alert and oriented, but his "cognitive processing speed and psychomotor processing speed were extremely slow" (R. 774). With respect to attention/concentration, Dr. Lim found that Mr. G. exhibited "strong performance accuracy and working memory, although notable slowness in attention processing speed and cognitive stamina"

(*Id.*). In language skills, Mr. G.'s estimated level of intellectual functioning and reading ability suggested "average abilities" (*Id.*). In memory/new learning, Mr. G. performed within mild to moderate impairment range, with "evidence of rapid information decay" (R. 775). Mr. G.'s visual-perceptual processing was within average to low average limits (*Id.*). Regarding executive functioning, Dr. Lim opined that "[d]espite his slower cognitive processing and vulnerabilities in memory and executive functioning, he is deemed an individual still capable of making decisions and managing his own affairs" (R. 776). Dr. Lim summarized her evaluation as suggesting mild to moderate deficits in a number of cognitive domains, with concern about psychiatric illness; mildly to severely impaired memory; and moderate to severely impaired visual-motor processing speed (*Id.*).

Dr. Lim made eight recommendations at the end of her evaluation, including that Mr. G. receive further assessment on possible alcohol and cannabis use, follow up with psychiatry for medication management, and use memory and cognitive enhancement strategies to assist in improving his cognitive functioning (R. 776-77). Dr. Lim listed 12 such strategies, including focusing on one step at a time and "tak[ing] extra time to focus and plan his approach and assess task completion" (R. 776).

On July 14, 2016, Dr. Koziol diagnosed Mr. G. with persistent depressive disorder and neurocognitive disorder (R. 802). Mr. G. described being visited by spirits at night and feeling mistrustful of others (*Id.*). On examination, Mr. G.'s affect had constricted range, and he talked freely about hallucinatory experiences with consequent delusions about the future (R. 803). Dr. Koziol continued to prescribe sertraline and added a prescription for olanzapine, an antipsychotic drug (R. 802-03). A brain MRI taken that day showed no significant abnormality (R. 821, 827-28).

On August 25, 2016, Dr. Koziol increased Mr. G.'s dose of olanzapine, which had helped with his sleep and may have decreased his auditory hallucinations (R. 800-01). On examination, Mr. G.'s affect range was "very limited," his thought process was organized but with little elaboration, his insight was minimal, and his judgment was affected by a paranoid attitude; Mr. G. was angry at a neighbor whom he thought stole his toolbox (*Id.*). Dr. Koziol assessed him with psychotic disorder/depression – chronic in nature (*Id.*). Dr. Koziol had Mr. G. complete a World Health Organization ("WHO") Disability Assessment Schedule 2.0. In the assessment, Mr. G. reported moderate to extreme impairment in understanding, concentrating, memory and communication and severe to extreme impairment in getting along with people, life activities, completing tasks and participation in society (R. 793-95, 885).

Also on August 25, 2016, Dr. Koziol filled out a Medical Source Statement of Ability to Do Work-Related Activities (Mental). With choices of poor, fair, good or excellent, Dr. Koziol checked boxes indicating Mr. G. had poor ability to remember locations and work-like procedures, understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday, perform at a consistent pace, interact appropriately with peers, coworkers or supervisors, and respond appropriately to changes in work setting (R. 749-50). Dr. Koziol indicated Mr. G. had fair ability to understand, remember and carry out short, simple instructions, make simple work-related decisions, ask simple questions, maintain socially appropriate behavior, and set realistic goals (*Id.*). Dr. Koziol also filled out a Specific Level of Functioning Assessment and Physical Health Inventory, which indicated, among other things, that Mr. G. was highly limited in his ability to sustain work efforts and complete assigned tasks (R. 879-81). In addition, Dr. Koziol noted that Mr. G. was totally dependent on others to handle his finances and help him travel from his home without getting lost (*Id.*).

**B.**

At his hearing on October 19, 2016, Mr. G. testified that he stopped driving because he gets confused and loses his way (R. 45-46). He also described "confusion, hearing voices, can't sleep at night, constant nightmares, can't remember like directions, anti-social . . . the depression and PTSD, being paranoid, stuff like that" (R. 55-56). Mr. G. testified that side effects from his medications include dizziness, blurred vision, upset stomach, and drowsiness (R. 60).

The ALJ included the same mental limitations in each hypothetical he gave to the VE: "[c]an understand, remember, and carry out simple and routine two to three-step tasks; can adapt to changes required in the performance of routine repetitive tasks; can interact occasionally with supervisors but only briefly and superficially with coworkers and the public" (R. 63-65). The VE testified that jobs exist in the national economy, but if a moderate limitation in attention and concentration and other psychological symptoms would take the individual off task more than 15 percent of the workday, that would preclude employment (R. 67).

**C.**

On January 4, 2017, the ALJ issued his opinion (R. 33). The ALJ found Mr. G. had the severe impairments of depression, PTSD, and status post-achilles rupture and tendon repair, along with several non-severe impairments, but that the impairments, alone or in combination, did not meet or medically equal a listing (R. 20-21). Applying the Paragraph B criteria, the ALJ found that Mr. G. had mild restrictions in activities of daily living ("ADLs") and social functioning and moderate difficulties with regard to concentration, persistence or pace (R. 22).[2]

---

[2]The revised medical criteria for evaluating mental impairments went into effect on January 17, 2017, after the ALJ issued this opinion. *Waldron v. Berryhill*, No. 17 C 3928, 2018 WL 4643173, at *6 n.4 (N.D. Ill. Sept. 27, 2018).

Regarding ADLs, the ALJ relied on Mr. G.'s testimony at the hearing and his reports to Dr. Gil that he does his own cooking, cleaning and laundry, as well as Dr. Gil's observation that he was well-groomed (R. 22). With regard to social functioning, the ALJ noted that Mr. G. was pleasant, cooperative, alert and oriented at his examinations with Dr. Gil and Dr. Lim (*Id.*). The ALJ acknowledged that in February and March 2015, Mr. G. reported having paranoia about his neighbors and anxiety about crowds and talking to himself, but the ALJ noted that Mr. G. denied overt audio-visual hallucinations (*Id.*). And, although Mr. G.'s affect was sad and restricted and his mood was moderately depressed at Dr. Gil's examination, the ALJ noted that he did not display loose associations, flight of ideas or hallucinations, and his thought process was logical (*Id.*). With regard to concentration, persistence or pace, the ALJ relied on Dr. Lim's testing. The ALJ recognized that the testing showed slow attention processing speed and cognitive status, severe impairment with visual motor processing speed and coding, and mild to severe impairment in memory performance, as well as strong performance accuracy, average language skills and intellectual functioning, and mild to moderate deficits in other cognitive domains (R. 22-23). The ALJ also found that Dr. Gil's examination did not show a memory problem (*Id.*).

The ALJ determined that Mr. G. had the RFC to perform light work with some physical limitations, and he "can understand, remember, and carry out simple, routine, 2-3 step tasks; can adapt to changes required in the performance of routine, repetitive tasks; and can interact occasionally with supervisors but only briefly and superficially with coworkers and the public" (R. 23-24). In support of this RFC, the ALJ reviewed Mr. G.'s testimony about his mental impairments, but determined that Mr. G. was an "unreliable informant," and his statements concerning the intensity, persistence and limiting effects of his symptoms "were not entirely consistent" with other evidence in the record (R. 30-31).

The ALJ acknowledged the following evidence showed Mr. G. had some limitations from his mental health impairments: he took olanzapine and sertraline; he "scored highly positive for PTSD, anxiety and depression" and reported visual hallucinations and problems with alcohol on on July 17, 2014; Dr. Gil diagnosed him with moderate to severe adjustment disorder with depressed mood (with no evidence of psychosis or thought process disorder) and moderate, chronic PTSD; Mr. G. described paranoia about neighbors and anxiety about crowds during examinations in February and March 2015; and Dr. Lim recorded some severe findings in her examination (R. 26-29). However, the ALJ stated that although "[t]esting by Dr. Lim supports some deficits in mental functioning, [] strengths were also noted, even in the context of questionable effort," including strong performance accuracy, mild to moderate impairment on tests of new learning and memory and average intellectual functioning (R. 30-31). The ALJ also noted that on July 17, 2014, Mr. G. did not show significant cognitive impairment, and he had fair insight and judgment and appropriate attention and concentration at some mental status examinations in 2015 (R. 24-29).

In addition, the ALJ found that Mr. G. made inconsistent statements regarding his mental health symptoms. The ALJ noted that "contrary to [Mr. G.'s] testimony," Mr. G. denied paranoia and overt audio-visual hallucinations at some mental status examinations in 2015, and in 2014, he was referred to psychiatry twice but did not show up and declined a referral (R. 27, 29). The ALJ also found Mr. G's statements about his substance use to be inconsistent because despite reporting alcohol abuse in June and November 2014, he was "rather guarded" in discussing alcohol or cannabis use with Dr. Lim in April 2016, and Dr. Lim recommended screening to assess any influence of alcohol or drugs on Mr. G.'s psychiatric presentation (*Id.*).

The ALJ gave "great weight" to Dr. Lim's testing, specifically her recommendation that Mr. G "should focus on only one task at a time and take extra time to focus and plan his approach

and assess task completion" (R. 29). The ALJ stated that Dr. Lim's testing "supports [Mr. G.'s] ability to perform 2-3 step simple and routine tasks" (*Id.*). By contrast, the ALJ gave "little weight" to the Functional Assessment form completed by Dr. Koziol, which "opined no more than fair to poor ability to perform most mental work activities" (R. 29-30).[3] The ALJ stated that the functional assessment was "inconsistent with the record as a whole" and did not align with the more severe limitations Mr. G. reported in the WHO assessment (*Id.*). On the other hand, the ALJ criticized Dr. Koziol's functional assessment for relying on the WHO assessment because Mr. G was "an unreliable informant" at times (*Id.*).

The ALJ concluded that Mr. G. remained capable of performing the jobs cited by the VE at the hearing "despite the waxing and waning nature of his mental symptoms" (R. 31-33). The ALJ stated that the 15 percent time off-task that the VE testified would be allowed at these jobs "would adequately accommodate any extra time [Mr. G.] needed to focus and plan approach to assessed tasks" (*Id.*).

### III.

Courts review ALJ decisions deferentially to determine if they are supported by "substantial evidence," which the Seventh Circuit has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (internal citations and quotations omitted). "Although we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review." *Moore v. Colvin*, 743 F.3d

---

[3] As noted above, this functional assessment form was titled Medical Source Statement of Ability to Do Work-Related Activities (Mental).

1118, 1121 (7th Cir. 2014). As explained above, we limit our analysis here to plaintiff's allegations that the ALJ erred in his treatment of Mr. G.'s mental health impairments, because we find that several of those errors require remand.

A.

*First*, we find that the ALJ's decision to give "little weight" to the functional assessment (the Medical Source Statement of Ability to Do Work-Related Activities (Mental)) that Dr. Koziol filled out was not supported by substantial evidence. Defendant does not dispute that Dr. Koziol was Mr. G.'s treating physician (*see* doc. # 24: Def.'s Resp. at 7); Dr. Koziol examined Mr. G. at least four times, and he was the attending psychiatrist at Mr. G.'s three visits with Dr. Mestrezat. In completing the assessment, Dr. Koziol wrote that he relied on Dr. Lim's testing finding "major neurocognitive disorder" and the WHO assessment filled out by Mr. G. (R. 749-80). The ALJ stated that he gave Dr. Koziol's opinion "little weight" because it relied on reporting by Mr. G., whom the ALJ found unreliable, and it was "inconsistent with the record as a whole," including Mr. G.'s reporting (R. 29-30).

"Under the 'treating physician rule' . . . a judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record." *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)).[4] The ALJ must offer "a good reason" for disregarding the opinion of a treating physician." *Walker v. Berryhill*, 900 F.3d 479, 485 (7th Cir. 2018). Moreover, the ALJ must evaluate a treating physician's noncontrolling opinion by considering the regulatory factors listed in 20 C.F.R. § 404.1527(c), including "the treatment relationship's length, nature, and extent;

---

[4]The treating-physician rule has been modified to eliminate the "controlling weight" instruction for claims filed after March 27, 2017, but the previous rule still applies to Mr. G.'s claim. *See Kaminski*, 894 F.3d at 874 n.1.

the opinion's supporting explanation and consistency with other evidence; and any specialty of the physician." *Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018).

The ALJ failed to offer a good reason for giving Dr. Koziol's opinion little weight. The ALJ criticized the opinion for relying on Mr. G.'s self-reporting but points out that contrary to Mr. G.'s self-reports, Dr. Koziol did not assess Mr. G. as severely functionally -- meaning that Dr. Koziol did not simply adopt whatever Mr. G. said.

The ALJ also failed to address the regulatory factors in assessing the weight to be given to Dr. Koziol's opinion. Most importantly, the ALJ failed to address the fact that Dr. Koziol is a psychiatrist, and he treated Mr. G. over the course of approximately two years, far longer than any other mental health expert in the record.

In addition, contrary to the ALJ's finding, Dr. Koziol's opinion that Mr. G. had fair to poor ability to perform most mental work activities finds support in the record beyond what Mr. G. reported to him. In 2014, Mr. G. tested highly positive for anxiety and reported visual hallucinations and paranoia, and Dr. Gil diagnosed him with moderate to severe adjustment disorder. In 2015, Mr. G. continued to describe paranoia and anxiety, and in 2016, Dr. Lim record several severe findings in her examination and diagnosed Mr. G. with major neurocognitive disorder with behavioral disturbances. The ALJ failed to adequately address this evidence supporting Mr. G.'s claim. "We could not discern from the ALJ's scant analysis whether he considered and dismissed, or completely failed to consider, this pertinent evidence, so the ALJ did not build a logical bridge from the evidence to his conclusion." *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018) (internal quotations and citations omitted).

## B.

*Second*, the ALJ claimed to give "great weight" to Dr. Lim, citing to the recommendation that Mr. G "should focus on only one task at a time and take extra time to focus and plan his approach and assess task completion" to support Mr. G.'s ability to perform two to three step simple and routine tasks (R. 29). But the ALJ's analysis of Dr. Lim's opinion fails to address evidence that suggests more profound limitations than described by the ALJ.

Dr. Lim observed that Mr. G.'s cognitive and psychomotor processing speeds were "extremely slow," he had "notable slowness" in attention processing speed and cognitive stamina, and he had moderate to severe impairment in visual motor processing speed (R. 773-75). Mr. G. also had strong performance accuracy, mild to moderate impairment on tests of new learning and memory and average intellectual functioning (*Id.*). Further, although Dr. Lim observed that Mr. G. was able to follow simple 2 to 3 step instructions (R. 775), the assessment did not end there. Dr. Lim also observed that Mr. G. was "slow to comprehend instructions," then "forg[o]t instructions rather quickly, requiring the clinician to repeat and simplify instructions" (R. 774). Ultimately, Dr. Lim diagnosed Mr. G. with major neurocognitive disorder with behavioral disturbances (R. 776). After Dr. Lim's testing, Dr. Koziol added the diagnosis of neurocognitive disorder to Mr. G.'s diagnosis of persistent depressive disorder and began prescribing Mr. G. olanzapine (R. 802).

"ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings." *Plessinger*, 900 F.3d at 915. Nor are ALJs allowed to "determin[e] the significance of particular medical findings themselves;" instead, "ALJs are required to rely on expert opinions." *Kaminski*, 894 F.3d at 875 (internal citations and quotations omitted). To do otherwise amounts to "play[ing] doctor." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018).

Here, the ALJ did just that -- cherry-picked and played doctor -- by giving "great weight" to positive aspects of Dr. Lim's examination, but failing to factor in Dr. Lim's diagnosis of major neurocognitive disorder with behavioral disturbances and the findings that supported that diagnosis. In making this decision, the ALJ not only inadequately addressed all the relevant findings in Dr. Lim's report, but he also ignored Dr. Koziol's decision to diagnose Mr. G. with major neurocognitive disorder in light of Dr. Lim's testing results.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (doc. # 16) is granted. We deny plaintiff's request for the unusual remedy of an outright reversal and immediate grant of benefits (Pl.'s Mem. at 13-14). Instead, we remand the case for further proceedings consistent with this opinion. The case is terminated.[5]

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

DATED: May 13, 2019

---

[5]Mr. G. made the further -- and unusual -- request for a hearing before the ALJ within 120 days (Pl.'s Mem. at 13-14). This request is denied, as this Court does not control the dockets of the administrative law judges.